In the Matter of the Assignment of The George T. Smith Middlings Purifier Company. Appeal of William Black.

*Insolvent estates—Labor debts—Precedence.*

1. Services rendered by a practical miller at a monthly salary and expenses, for a corporation engaged in the manufacture and sale of flouring-mills and milling machinery, in going from place to place after sales were made, and putting the machinery in running order, and giving it a trial to see if it performed the contract of sale satisfactorily, are held to be *labor* performed for the corporation, within the letter and spirit of Act No. 94, Laws of 1887, which prefers *labor* debts due from insolvent debtors.

2. Act No. 94, Laws of 1887, which prefers debts due for labor performed for insolvent debtors, creates no new liabilities, but merely regulates the distribution of insolvent estates.

3. The following propositions are summarized from the opinion of Chief Justice Champlin :

   *a*—In cases which have come before this Court wherein a liability was sought to be enforced against stockholders for labor performed for the corporation, a restricted construction of the meaning of the word "labor" has been adopted, under the well-known rule that a surety is only liable according to the strict terms of his undertakings.

   *b*—In *Brockway v. Innes*, 39 Mich. 47, it was held that the services of an assistant chief engineer of a railroad company in

83 Mich—33.

constructing its road were not labor performed for the corporation, within the meaning of section 7 of Article 15 of the Constitution, which makes stockholders individually liable for all such labor.

c—In *Peck v. Miller*, 39 Mich. 594, it was held that stockholders occupied the position of sureties to the corporation with respect to liability for labor debts, and that courts cannot enlarge a surety's liability beyond the plain terms of his suretyship, and that railroad contractors were not within Comp. Laws of 1871, § 2412, making stockholders individually liable to an amount equal to their stock for all labor performed for the company.

d—In *Railroad Co. v. Sturgis*, 44 Mich. 538, it was held that under Comp. Laws of 1871, §§ 2393-2395, providing for the protection of laborers and persons furnishing material for the construction and repairing of railroads in this State, a distinction is clearly marked between those who contract *for* labor and materials and the persons who actually perform the labor and actually furnish materials. The law limits its protection to the one who labors, and does not lend it to the one who merely hires out the labor of others.

e—In *Jones v. Avery*, 50 Mich. 326, it was held that a claim for services performed by a traveling salesman hired at an annual salary of $1,000 was not a labor debt, within the meaning of the Constitution, and hence a stockholder was not liable for it.

Appeal from Wayne.   (Hosmer, J.)   Argued November 19, 1890.   Decided December 5, 1890.

Petition to declare a debt due the petitioner for labor a preferred claim against an insolvent corporation, under Act No. 94, Laws of 1887.   Petitioner appeals.   Reversed, and prayer of petitioner granted.   The facts are stated in the opinion.

*Eugene Pringle,* for petitioner.

*Thomas A. Wilson,* for receivers.

[The points of counsel are fully stated in the opinion, where many of the authorities are reviewed.—REPORTER.]

CHAMPLIN, C. J. This appeal is from an order of the circuit court for the county of Wayne, in chancery, adjudging that the claim of petitioner was not entitled to preference as a debt owing to him for labor under the provisions of Act No. 94, Laws of 1887 (3 How. Stat. pp. 3789, 3790).

The George T. Smith Middlings Purifier Company is a corporation, and prior to January 14, 1890, was extensively engaged in building flouring-mills and in the manufacture and sale of milling machinery, and on that date it was insolvent, and made a common-law assignment. The petitioner had been in the employment of the corporation for several months, and was still in its employment when it made the assignment.

The petitioner filed proof of his claim February 19, 1890, which amounted to $2,527.23, consisting of two items, one for traveling expenses of $32, and the other for a balance due him for work and labor, performed by him for the company between August 11, 1887, and the date of the assignment, for the sum of $2,495.23. In the proof of his claim he claimed to be entitled to a preference over all other creditors not of the same class with himself, except such, if any, as may have valid liens antedating the time when he rendered his services, or some part thereof, for the portion of his claim asserted to be for work and labor. He soon afterwards filed the petition shown by the record, which was answered by the assignees. These proceedings were originally in Jackson county, whence the assignment proceedings were removed by the order of a circuit judge to Wayne county, carrying, as was assumed by both parties, these proceedings with it.

The petition, answer, and testimony show that Mr. Black was in the employ of the insolvent corporation about two years and five months before the assignment, at

the wages or salary of $125 per month, and expenses, and that there were due to him at the time of the assignment the sums mentioned in his proof of claim. The main question to be considered is whether the character of his employment supports his claim to a preference, for the labor debt included, under Act No. 94, Laws of 1887. The evidence is that he was a practical miller of about eight years' experience in 1887, who knew no other trade, and had never pursued any other occupation; that his work for the corporation was at his trade at such places as he was from time to time sent by its executive officers; that the ordinary occasion of his employment was to start new mills or new machinery built or put in by the corporation, with a view to show to owners the practical results in the yield of flour from wheat, and of flour of the grades and quantities which the mill or machinery had been contracted to produce; that his services were such as could have been as well performed by any competent miller equally familiar with the same machinery; that the main purposes of his employment were, while incidentally showing to the employés of the owners how the mill or machinery should be operated, to hasten and procure the acceptance of mills and machinery, and to ascertain the exact facts upon which owners might claim damages or recoupments to reduce contract prices; and that the business in which he was so employed was severe manual labor, in performing which he applied to his work the results of his observation, knowledge, and experience as a miller, and of the skill which he had acquired while working at his trade.

The answer to the petition put in by the assignees, who have since been appointed receivers, contains the following admissions:

"8. They admit that the petitioner is by occupation a 'practical miller, and that his services for said corpora-

tion were in connection with his said occupation at such places as directed by the officers of said corporation.

"9. That he was sent to many different parts of the United States for the purpose of starting new mills which had been built by said corporation, or new machinery which it had put into mills, with a view to show the owners the practical results in the yield of flour from wheat, and the grades and qualities of flour which the mill or machinery had been contracted to produce, and that such services could have been as well performed by any competent miller equally familiar with the same machinery.

"10. That the business of petitioner was similar in character to that of any head miller employed in running mills equipped with machinery of said corporation; and charged that, while he may have performed some manual labor, his compensation was largely for his skill and experience in the business, and as an expert."

The character of the work is thus described by appellant. He testified:

·"When I arrived at a place where they were building a mill, as a rule, the mill was incomplete,—not ready for operation. I always started in and put belts on, on the different machines, on the machinery; put cloths on, on the bolting reels and wipers, and worked around the machines, to lubricate the rolls and the machinery or anything else; got everything in shape, and worked along ready for starting. After I got the mill in operation, we commenced to do our milling work, manufacturing flour and running the mill as a miller, until such time as the mill produced the necessary flour, according to contract, and filled it. After that had been done, and I got a written acceptance of the mill, that finished my work at that place."

The law under which the preference is claimed reads as follows:

"SECTON 1. *The People of the State of Michigan enact,* That all debts which shall be owing for labor by any person or persons or corporation at the time he, they, or it shall become insolvent, shall be preferred claims against the estate of such insolvent debtor or debtors, and have precedence in the payment thereof over all debts owing

by such insolvent debtor or debtors, at the time of becoming insolvent, which shall not have become a lien on such estate, or some portion thereof, prior to the performance of the labor for which such debts for labor shall be owing." Act No. 94, Laws of 1887 (3 How. Stat. § 8749 m).

Was the debt in this case owing for labor, within the meaning of the statute? The question mainly depends upon the construction which should be placed upon the term "labor," as used in the statute. If the Court shall adopt a liberal construction, then the services performed by the petitioner would come within the signification of "labor," entitling him to a preference. But if a strict construction is adopted, and a limited meaning shall be placed upon the word "labor," as used in this statute, then the services rendered may be excluded from the benefits of the statute. In cases which have come before this Court wherein a liability was sought to be enforced against stockholders of corporations for labor performed for such corporations, this Court has adopted a restricted construction of the meaning of the word, according to the well-known rule that a surety is only liable according to the strict terms of his undertaking. The Court held in this class of cases that stockholders stood in the relation of sureties to the corporation with respect to liability for labor debts. In Brockway v. Innes, 39 Mich. 47, this Court held that the services of an assistant chief engineer of a railroad company in constructing its road were not labor performed for the corporation, within the meaning of section 7, Art. 15, of the Constitution, which makes stockholders individually liable for all labor performed for such corporation. In deciding this case, the Court said:

"No doubt the term 'labor,' in some extended senses, will include every possible human exertion, mental and physical, and in that broad signification it would be hard

to find any case which would not come within the law. But inasmuch as the provision is manifestly designed to be exceptional, we must apply to it the ordinary meaning which is in common use, and which it must be presumed the people understood when they voted on the Constitution. Doubtless the precise line between what is commonly called 'labor' and other employment cannot be drawn with absolute precision. But we feel very sure that the position of an assistant chief engineer would never have been classed as that of a laborer, nor his work as labor, in the popular sense. It is mostly direction and scientific work, involving much more superintendence than personal exertion in manual labor."

This case, among others referred to below, is relied on by counsel for the assignees as governing this case. But the distinction between the services performed by an assistant chief engineer of a railroad and the petitioner, as shown by the testimony in this case, is apparent. They are not at all analogous in character. The one is mostly direction and scientific work; the other manual labor, and practical demonstration in the operation of machinery to produce the required result,—the performance of such services as are usually performed by the head miller in a flouring-mill. No one, I suppose, would deny that the head miller in a flouring-mill did perform manual labor, or such labor as the statute prefers in case of the insolvency of an employer.

In *Peck v. Miller*, 39 Mich. 594, this Court again held that stockholders occupied the position of sureties, and that courts cannot enlarge a surety's liability beyond the plain terms of his suretyship; and in that case it was held that contractors for constructing a line of railroad were not within the statute of 1871, making stockholders individually liable to an amount equal to their stock for all labor performed for the company. In deciding the case it was said, in speaking of the constitutional provision above referred to, that—

"We can get very little assistance from adjudged cases in construing this language of the Constitution. But there can be no doubt, we think, that the main, if not the only, object of this provision was to secure the claims of laborers whose wages are not usually very large, but whose means are not generally such that they can avoid suffering unless they are secured."

It must not be understood from this language that the provision of the Constitution depends at all upon the smallness of the claim for labor, or the poverty of the claimant. The reasoning was made use of to demonstrate that the constitutional provision was not intended to cover the case of a contractor with a railroad company for doing and completing a job such as that shown by the testimony then before the Court.

It was again held in *Chicago & Northeastern R. R. Co. v. Sturgis,* 44 Mich. 538, that, under an act for the protection of laborers and persons furnishing material for the construction and repairing of railroads in this State, a distinction is clearly marked between those who contract for labor and materials and the persons who actually perform the labor and actually furnish materials. The law limits its protection to the one who labors, and does not extend it to the one who merely hires out the labor of others. The case throws no light upon the present controversy.

In *Jones v. Avery,* 50 Mich. 326, we held that a claim for services performed by a traveling salesman hired at a salary of $1,000 per year was not a labor debt, within the meaning of the Constitution, and hence a stockholder was not liable for it. In deciding the question, this language was made use of:

"He had no part in carrying on the establishment nor in the manufacture. He was a mere outside agent or representative of the company to bring business to it upon a salary. As regards the present question, his position

was nearer the position of an officer of the corporation than that of a laborer."

That case is quite dissimilar to the one now under consideration. Here Black had nothing to do with the sale of the machinery. He was sent out after the corporation had made sales to put the machinery in running order, and give it a trial to see if it performed the contract satisfactorily. I cannot see why such work is not as much labor for the corporation, in the most ordinary acceptation of the term, as it would be if the same work had been performed in the shops of the corporation, and the test made there. He performed no duty and filled no position akin to an officer of the corporation. In the language of the answer to the petition, his—

"Business was similar in character to that of any head miller employed in running mills equipped with machinery of said corporation."

The statutes under which the decisions above quoted have been made were those based upon the provisions of the Constitution extending the liability, or upon statutes creating a liability, where no contract relations existed, and where no liability existed before or independent of the statute. In all such cases a strict construction must be placed upon the statutes, because, although remedial, they are in derogation of the common law, and impose liabilities where none existed before. But the statute under consideration creates no new liabilities. It is merely a statute regulating the distribution of insolvent estates. It does not depend upon any constitutional provisions to authorize it. It regards the remuneration of labor performed for an employer as more worthy of payment than mere merchandise debts or other unsecured claims against an insolvent debtor. Its merits are of the same nature as those which prefer debts due to the United States or to the State, and debts due for the

last sickness and funeral expenses, in insolvent estates of deceased persons, and I think it should have a just and liberal construction. If, however, a strict construction should be placed upon the statute, I still think the claim of petitioner would come within the letter and spirit of the statute as "labor performed for the corporation." It was, in a large measure, manual labor, requiring judgment and experience in its performance, and consequently commanding a higher recompense than unskilled and inexperienced labor. I see no reason why, under the statute, the claim for labor should not be entitled to be placed in the class of preferred claims.

The other Justices concurred.