THE BANK OF MONTREAL ET AL. V. THE J. E. POTTS
SALT & LUMBER COMPANY. IN RE PETITION
OF JAMES A. SAYLES & COMPANY.

*Insolvent debtor—Labor claims—Preferences.*

The services of a lumber inspector in passing upon and determining the grades of lumber and logs, he being employed by both purchaser and seller, and receiving his pay in part from each, and determining the grades finally between them, do not constitute labor within the meaning of Act No. 94, Laws of 1887 (3 How. Stat. § 8749*m*), which provides that the labor debts of an insolvent ⋅person or corporation shall be preferred claims against his or its estate.

Appeal from Wayne. (Gartner, J.) Argued June 9, 1892. Decided June 17, 1892.

Petition for allowance of claim against the estate of an insolvent corporation under Act No. 94, Laws of 1887. The receivers appeal from an order allowing the claim. Order reversed. The facts are stated in the opinion.

*Elliott & McLean,* for petitioners.

*Alfred Lucking,* for appellants.

MONTGOMERY, J. This is a proceeding by petition to have a claim allowed as a preferred claim against the estate of the J. E. Potts Salt & Lumber Company.

The petitioners are copartners, and engaged in the business of inspecting lumber at Oscoda. The testimony shows that the business of inspecting lumber is conducted by petitioners with the aid of assistants, and consists in making measurements of logs or lumber, and ascertaining and determining their quality. The value of the services rendered does not depend upon the ability to

compute actual measurements correctly, although this constitutes a portion of the work, but is largely and chiefly valuable because of and in proportion to the ability of the inspector to pass upon and determine qualities and grades. It is true, undoubtedly, that there is manual labor connected with the business, but it is clearly not manual labor which commands the compensation which is paid to inspectors, for, while at Oscoda manual labor can be obtained at from $2 to $3 per day, the services of an inspector often net him from $25 to $50, and sometimes as high as $75, per day. The services in this case consisted in passing upon and determining the grades of lumber and logs; the claimants being employed by both purchaser and seller, and determining the grades finally between them. The sole question is whether this service constitutes labor, within the meaning of the statute (Act No. 94, Laws of 1887).

As was pointed out *In re Clark, ante,* 351, this statute was primarily enacted in the interests of wage-earners; and, as was there said, the statute is broad enough to cover all debts actually owing for manual labor, and this though the labor may be performed by those who are skilled in their particular calling. In *Black's Appeal,* 83 Mich. 513, it was held that one who renders such services as are usually required of a head miller is entitled to the protection of the statute. So we would be prepared to hold in any case that any person whose business it is to work for wages regularly is entitled to the protection of the statute, none the less because he is required to exercise skill in his calling. Yet, in view of the possible results of a more liberal construction of the term "labor" as employed in the statute, as pointed out *In re Clark, supra,* we think the term should not be construed in its broadest sense.

In a sense, every one who performs professional serv-

ices for a corporation is a laborer; in a sense, the president as well as every officer of the corporation is a laborer; yet we think it would hardly be contended that it was intended to give the president or officers of the corporation, or those who perform professional services for the corporation, a lien which should supplant all liens acquired upon the property after the date of the rendition of the services. Nor do we think the term should be applied to services of the character here sought to be preferred. The services were to be paid for partly by the insolvent, and partly by the purchasers of the lumber. As already pointed out, the manual labor performed was but an insignificant part of the services rendered. The charges against the insolvent for services from April 16, 1890, to November 21, 1890, which constituted one-half of the inspection charges, amounted to $2,861.61. The calling, it will be seen, is lucrative as well as skilled. What is compensated is not the labor, but the judgment and integrity, of the inspector. The inspector is nothing less than an arbitrator between the parties, and to hold this class of services within the meaning of the statute would, we think, require that all professional services, as well as services of the officers of the corporation, should be likewise protected.

The order appealed from will be reversed, with costs, and the petition dismissed.

The other Justices concurred.