In re JONES.

(District Court, W. D. Michigan, S. D.  February 26, 1907.)

1. BANKRUPTCY—DEBTS ENTITLED TO PRIORITY—EVIDENCE.

While a verified petition for the allowance of a claim in bankruptcy is prima facie evidence of the validity of the claim itself, on which it may be allowed as a general claim, allegations therein of facts to establish the right of such claim to priority are not to be taken as prima facie true, but must be proved by evidence.

2. SAME—STATE LAWS GIVING PRIORITY.

The principle controlling the construction and effect of Bankr. Act July 1, 1898, c. 541, § 64b (5), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448], which provides for giving priority to debts owing to any person who by the laws of the state is entitled to priority, is that the creditor shall be allowed the same priority under the bankruptcy act which he would have had if such act had not superseded the state laws governing the distribution of the estates of insolvent debtors.

3. DEBTS DUE AS GUARDIAN—MICHIGAN STATUTE.

Comp. Laws Mich. § 9675, which provides that the assignee of an insolvent debtor "under this title" shall pay in full all debts owing by the debtor as guardian, etc., is not a law of the state of such general character as gives priority to a debt due from a bankrupt as guardian, under, Bankr. Act July 1, 1898, c. 541, § 64b (5), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448], being applicable only in special proceedings under that title, which by reason of their requiring the joinder of the insolvent and two-thirds of his creditors have seldom been resorted to for the distribution of estates of insolvents.

In Bankruptcy.  On review of decision of referee.

C. W. Hendryx, for petitioners.

G. M. Valentine and Chas. E. Sweet, for trustee and creditors.

KNAPPEN, District Judge.  The bankrupt at the time of his adjudication was guardian of 13 Pottawatomie Indian minors, under appointment of the respective probate courts of various counties of Michigan in 9 separate estates; the guardianship funds being moneys paid under congresssional appropriations on account of claims held by that tribe against the United States government.  At the time of his adjudication the bankrupt, as such guardian, owed to these 9 respective guardianship estates sums ranging from $150 to $770, and aggregating $3,-709.54.  The bankrupt, neither personally nor otherwise, caused any claim to be presented against the bankrupt estate on account of the indebtedness referred to.  The sureties upon the respective guardianship bonds given by the bankrupt accordingly filed before the referee proofs of the respective claims, and petitions for the allowance of the same as prior claims—the grounds of alleged priority being, first, that the debt in question, being one owed by a guardian, is entitled to priority under the laws of Michigan, and therefore so entitled under section 64, subd. b(5), of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448]); and, second, that the bankrupt estate has been increased by the receipt of the guardianship money by the bankrupt—the allegation in the proof of claim being "that said sum so obtained of said minor Pottawatomie Indians aforesaid was used by the said guardian aforesaid and mingled with his own property, that

said money is now a part of the property which is assets of the said bankrupt in the hands of the trustee in bankruptcy, and that said sum aforesaid, due as aforesaid, swelled the assets of the said estate of said bankrupt to the amount stated herein." Attached to each of the petitions for proof of claim and order for priority is a duly authenticated copy of the last account of the bankrupt as guardian, as submitted to the probate court, containing his admission of the amount owing from him to his wards.

No objection was made to the allowance of the claims as general claims, but objection was made by the trustee and several creditors to their allowance as prior claims. No proof was submitted upon the hearing before the referee, aside from the proof of the claim originally filed, and the petitions were heard upon such proofs and arguments of counsel. The referee allowed the respective claims as general claims at the amounts respectively asserted, but in the case of each claim denied priority. The proceedings are brought here under petitions for review of the refusal of the referee to allow the priority claimed. The questions presented are, first, whether the claims are entitled to priority independently of section 64, subd. b(5), of the bankrupt act; and, second, whether they are entitled to priority under that section.

1. The referee rightly refused to allow priority upon the ground that the estate in the hands of the trustee in bankruptcy had been increased by the amount of the guardianship funds, through the mingling of the same by the guardian with his own assets. Had the allegations referred to been proven, the priority claimed might have been established. See Smith v. Township of Au Gres, Mich., 150 Fed. 257, recently decided by the Circuit Court of Appeals of the Sixth Circuit. But no proofs were introduced in support of the allegations mentioned. The certificate of the referee is express that "no proof was submitted aside from proof of claim originally filed," and that the "claim was submitted upon such proof and argument of counsel."

It is contended by the petitioner that, as the petition was sworn to, the truth of the allegation in question is prima facie established upon the principle that the sworn proof of claim against the bankrupt is prima facie evidence of its allegations, even if objected to. This is undoubtedly the rule, as applied to the proof of the claim itself as a general claim, considered apart from the question of priority. In re Dresser, 135 Fed. 495, 68 C. C. A. 207; s. c. Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. 584. These decisions do not, to my mind, support the proposition that allegations relating to alleged priority are to be taken as prima facie true, for the purpose of establishing such priority, in the absence of evidence for or against the fact. The proof of claim, as such, is governed by section 57 of the bankrupt act (30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]). The subject of priorities is governed by section 64. The question presented in the Dresser Case related entirely to the proof of claim as a general claim, under section 57 of the bankrupt act, and had nothing to do with the question of priority, under section 64 of the act. This is true of all the cases cited in Whitney v. Dresser, viz.: In re Sumner (D. C.) 101 Fed. 224; In re Shaw (D. C.) 109 Fed. 780; In re Cannon (D. C.) 133 Fed. 837;

In re Carter (D. C.) 138 Fed. 846; In re Felter (D. C.) 7 Fed. 904; In re Doty, 5 Am. Bankr. R. 58. In re Saunders, 2 Low. 444, Fed. Cas. No. 12,371, arose under the bankrupt act of 1867, and related only to the proof of claim, and not to questions of priority.

The distinction between the practice under sections 57 and 64 seems clear. There is no requirement that a priority should be claimed in the petition for the proof of claim. This priority is matter of administration, and may be asserted at any time, in connection with or before the payment of dividends. While the statute expressly provides what the proof of claim shall contain (and general order No. 21 imposes some additional requirements), no requirement is made as to the contents of a petition for priority. The language of the clause relating to "debts which have priority" is:

"(b) The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be," etc.

The distinction between the proof of a claim and the establishment of priority is pointed out by the Circuit Court of Appeals for the First Circuit in Re Worcester County, 102 Fed. 808, 813, 42 C. C. A. 637. The Supreme Court based its decision in Whitney v. Dresser upon the language of the statute relating to proofs of claim, viz., section 57, saying:

"The words of the statute suggest, if they do not distinctly import, that the objector is to go forward, and thus that the formal proof is evidence even when put in issue. The words are: 'Objections to claims shall be heard and determined as soon' etc. Section 57f. It is the objection, not the claim, which is pointed out for hearing and determination. This indicates that the claim is regarded as having a certain standing already established by the oath."

No such provision is contained with reference to priority, the practice regarding which, as already stated, is not provided by statute. The reasons for the rule of prima facies applicable to proofs of claims do not apply to petitions for priority. In my opinion the allegations relating to priority were not prima facie evidence of their truth.

2. Are the claims entitled to priority under section 64b (5) of the bankrupt act? The priority section provides:

"(b) The debts to have priority, except as herein provided, and to be paid in full out of the bankrupt estates, and the order of payment shall be * * * (5) debts owing to any person who by the laws of the States or the United States is entitled to priority." Bankrupt Act, § 64.

Chapter 265 of the Compiled Laws of Michigan of 1897, under the title "Of the Powers, Duties, and Obligations of Assignees of Insolvent Debtors under This Title," contains this provision:

"(9675) Sec. 31. In making such distribution the assignee shall first pay all debts that may be owing by the debtor as guardian, executor, administrator, or trustee; and if there be not sufficient to pay all debts of the character above specified, then the distribution shall be made among them in proportion to their amounts respectively." 3 Comp. Laws Mich. 1897, § 9675.

The general title, referred to in the title of the chapter quoted from, is "Of the Punishment of Fraudulent Debtors and the Relief of Insolvent Debtors." Is this statute such a "law of the state" of Michigan as entitles the claims in question to priority under the bankrupt act? It

may be conceded that, if this statute is applicable to the settlement and distribution of the estates of insolvent debtors generally under the Michigan laws, it is such a "law of the state" as will entitle the claims in question to priority.

The federal courts have construed with a fair degree of liberality the priority provisions of the bankrupt act. The cases of City of Chattanooga v. Hill, 139 Fed. 600, 71 C. C. A. 584, and State of New Jersey v. Anderson, 27 Sup. Ct. 137, 51 L. Ed. ——, fairly illustrate this tendency. In the case first cited, the Circuit Court of Appeals of the Sixth Circuit held that, under section 64a of the bankrupt act, taxes assessed against land have priority, although the land on which the taxes were assessed never came into the hands of the bankruptcy trustee. In the second case cited, the Supreme Court held that, under the same section 64a, franchise fees owing by a corporation to the state of New Jersey, under whose laws it was created, have priority as taxes owing to a state, although the bankrupt corporation did no business in New Jersey, and although by such construction of the bankrupt act preference was given to the state of New Jersey over creditors who dealt with the corporation at its place of business.

It is a settled rule that state insolvency laws are not annulled by the enactment of a bankruptcy act, and that the only effect of such enactment is to suspend their operation, so that they become operative again, wi'hout re-enactment, when the bankruptcy act is repealed. In re Wright (D. C.) 95 Fed. 807; In re Worcester County, 102 Fed. 808, 42 C. C. A. 637; Butler v. Goreley, 146 U. S. 303, 314, 13 Sup. Ct. 84, 36 L. Ed. 981. And accordingly it has been held in several cases that, where a statute of the state makes a debt of a given class a preferred claim in insolvency, such statute remains a "law of the state," within the meaning of section 64b (5) of the bankrupt act, which gives priority of payment out of a bankrupt's estate to debts which are entitled to priority under the "laws of the states or the United States." In re Wright (D. C.) 95 Fed. 807; In re Worcester County, 102 Fed. 808, 42 C. C. A. 637, affirming In re Wright, supra; In re Daniels (D. C.) 110 Fed. 745; In re Lewis (D. C.) 99 Fed. 935; In re Crow (D. C.) 116 Fed. 110.

In Re Wright and in Re Worcester County, supra, the question arose over a claim owing by the bankrupt to the county of Worcester. The general insolvency law of Massachusetts made a debt due from an insolvent to "any county" entitled to priority of the first class. Pub. St. Mass. 1882, c. 157, § 104. The Massachusetts statute referred to was a general insolvency law. It provided for voluntary insolvency upon the application of the insolvent alone, without participation by creditors. It also provided for involuntary insolvency upon the application of "any of his creditors whose claims, provable against his estate, amounted to $100." Pub. St. Mass. 1882, c. 157, §§ 16, 112. The Supreme Court of Massachusetts has held that priorities created by the insolvency law control by analogy the distribution of an estate in the hands of receivers. Jones v. Publishing Co., 171 Mass. 22, 50 N. E. 15. And, as said in Re Wright, supra, the decision in Jones v. Publishing Co. has been substantially enacted into the statute of Massachu-

setts. In deciding that the priority given by the Massachusetts insolvency statute was preserved under the bankrupt act, the Circuit Court of Appeals of the First Circuit said:

"We are unable to conceive of any priority to which any one may be entitled by the laws of the state, under section 64 of the bankruptcy act, unless it be the priority created by insolvent laws of that character. It is true that priorities are often created by state statutes relating to the administration of estates of deceased persons, and also to proceedings for winding up corporations; but such laws are not of that general character which can be supposed to be within the purview of the provision of the bankrupt act which is concerned here. Of course, statutes touching assignments for the benefit of creditors must be classed with insolvency laws, strictly so called." In re Worcester County, 102 Fed., at page 816, 42 C. C. A. 645.

In Re Daniels, supra, it was held that costs incurred in an action against the bankrupt prior to the bankruptcy, which would constitute a preferred claim under the insolvency laws of the state of Rhode Island, are entitled to priority against the estate in bankruptcy, under section 64b (5) of the bankrupt act. In Re Lewis, supra, it was held that the priority of payment given by the Massachusetts insolvency law to fees of a sheriff, accruing on a writ of attachment founded on a provable debt and issued before the commencement of proceedings in bankruptcy, was protected under section 64b (5) of the bankrupt act. In Re Crow it was held that an amount found due from a guardian to his ward, on a settlement of his accounts in a probate court of Kentucky, is entitled to priority from the estate of the guardian in bankruptcy, under section 64b (5) of the bankrupt act, the statutes of Kentucky providing that in a distribution of insolvent estates, whether on a voluntary or involuntary assignment, or the death of the insolvent, debts due as guardian shall be paid in full before any payment shall be made to general creditors. Ky. St. 1903, § 74. The principle controlling these decisions seems to be that a creditor shall be allowed the same priority under the bankrupt act which he would have had, had not the later act superseded the state laws governing the distribution of estates of insolvent debtors. Tested by this rule the question is: Would the petitioners have been given the priority claimed here, had the debtor's estate been distributed under the laws of Michigan governing the distribution of the estates of insolvents, instead of under the bankrupt act?

The Michigan statute invoked in support of the priority asserted (3 Comp. Laws Mich. 1897, § 9675) relates by its terms entirely to proceedings under chapters 261 to 266, inclusive, of the Compilation of 1897. These chapters were originally Nos. 141 to 146, inclusive, of the Revised Statutes of 1846, under the general title "Of the Punishment of Fraudulent Debtors and the Relief of Insolvent Debtors." Chapter 141 (now 261) relates to the "Punishment of Fraudulent Debtors," and contains no provision by way of relief from either debts or imprisonment. Chapter 142 (now 262) relates to the "Relief of Insolvent Debtors" on the application of an insolvent and his creditors, and provides for the insolvency proceedings only upon the application of the debtor, with the concurrence of creditors representing at least two-thirds of all the debts owing by him to creditors residing within the United States. 3 Comp. Laws Mich. 1897, §§ 9573, 9574. This is

the only chapter under the title referred to providing for a discharge of the insolvent from his debts, and the only chapter providing for insolvency proceedings except on behalf of an imprisoned debtor. No right to either voluntary or involuntary proceedings in insolvency (except by way of relief from imprisonment) is given. The relief, as well as the proceedings, are limited to cases in which the debtor and two-thirds of his creditors living in the United States actually join in the application. Chapter 143 (now 263) relates entirely to the relief of insolvent debtors from imprisonment, having no relation to relief from debts. Chapter 144 (now 264) contains "general provisions applicable to proceedings under the last two preceding chapters." Chapter 145 (now 265) relates to the "powers, duties, and obligations of assignees of insolvent debtors, under this title." It is in this chapter that section 9675 in question is found. It is significant that by the express limitation of the title to the chapter, in connection with the language of the section invoked, the rule of distribution is by its terms limited to proceedings under that title, viz., the general title contained in the Revision of 1846, "Of the Punishment of Fraudulent Debtors and the Relief of Insolvent Debtors." This statute, to my mind, is not a general insolvency law.

In the Compilation of 1897, under the title "Of Proceedings in Insolvency," the chapters above referred to are published, preceded (under the same title) by an act "to provide for the regulation and enforcement of assignments for the benefit of creditors" (passed in 1879), and by an act (passed in 1887) making all debts for labor preferred claims against the estates of debtors becoming insolvent. 3 Comp. Laws Mich. 1897, §§ 9539, 9552. Both the general assignment law referred to and the labor preference law are existing laws of the state, except so far as they are affected by the existence of the bankrupt act.

Previous to the passage of the present bankrupt act, estates of insolvent debtors were usually, if not universally, administered in Michigan under either common-law assignments (later regulated by the general assignment statute of 1879), mortgage foreclosure, or receivership in some form. They have seldom, if ever, been administered under chapter 262, which relates to the "Relief of Insolvent Debtors," although the provisions of chapter 263, relating to the "Relief of Insolvent Debtors from Imprisonment," have been occasionally invoked, although rarely, as under the Michigan Constitution imprisonment for debt generally is forbidden. Const. Mich. art. 6, § 53. The reports of the Supreme Court of Michigan fail to show that any case arising under chapter 262, or any case involving the application of section 9675 in question, has ever been brought before that court. As indicating what is meant by a general insolvency statute, it is significant that the labor preference statute referred to has been applied to the distribution of the estates of insolvents, not only under mortgage foreclosures by way of intervention (Mich. Trust Co. v. Grand Rapids Democrat, 113 Mich. 615, 71 N. W. 1102, 67 Am. St. Rep. 486; In re Clark, 92 Mich. 351, 52 N. W. 637; In re Sayles, 92 Mich. 354, 52 N. W. 637), under statutory assignments for the benefit of creditors, in which preferences are forbidden (Appeal of Black, 83 Mich. 513, 47 N. W. 342),

but also under original bill filed against mortgage and attaching creditors in possession of the debtor's assets (Lawton v. Richardson, 118 Mich. 669, 77 N. W. 265). This labor preference statute would probably be similarly extended to receiverships, as was done in Massachusetts; the Michigan statute making express provision for granting receiverships for the protection of labor claimants. 3 Comp. Laws 1897, § 9552. It would also, no doubt, apply to bankrupt estates, but for the fact that the bankrupt act contains express provisions on the subject of preference for labor debts. which override the provision of the statute law. In re Wright (D. C.) 95 Fed. 812; Rouse, Hazard & Co., 91 Fed. 96, 33 C. C. A. 356.

On the other hand, and in sharp contrast to the general application of the labor insolvency statute, to none of these methods of administration and distribution of the estates of insolvent debtors under the state law has any attempt ever been made to apply the provisions of section 9675, here invoked, and doubtless for the reason that that section is by its terms limited to proceedings under the chapters included within the title in the 1846 Revision, "Of the Punishment of Fraudulent Debtors and the Relief of Insolvent Debtors." In the absence of a bankruptcy statute, had the estate of this bankrupt been administered as an insolvent estate under Michigan laws, under either assignment for benefit of creditors, mortgage foreclosure, or receivership, or by any method except that provided by chapters 262 and 263 of the Michigan Compilation, the priority invoked would not have been recognized. The possibility of such estate being administered under chapters 262 or 263 would be very slight. As before stated, such administration could occur only by way of relief from actual imprisonment or, otherwise, only with the concurrence of the debtor and creditors representing at least two-thirds of all debts owing to creditors within the United States. To my mind, section 9675 is, therefore, not "of that general character which can be supposed to be within the purview of the provision of the bankrupt act which is concerned here," and not such a "law of the state" as to give priority under section 64b (5) of the bankrupt act. It follows that the referee rightly refused priority to petitioners' claims.

The order of the referee is affirmed, but without prejudice to the right of the petitioners to present, in connection with the making of dividends or otherwise, applications for preference upon the ground that the bankrupt estate has been increased by the guardianship funds in question, in case petitioners are able to establish by proof their allegations in that regard.