### ADDICOTT v. UPTON

1. CORPORATIONS—LIABILITY OF STOCKHOLDERS—LABOR DEBTS.
   Statutory liability is imposed on the stockholders of a corporation for the unpaid debts to those who provided labor to the corporation, not to all its employees, and such liability, since it did not exist at common law and is in the nature of a suretyship, will be strictly limited as provided by statute.

2. CORPORATIONS — LIABILITY OF STOCKHOLDERS — LABOR DEBTS — LABORERS — CHANGE OF POSITIONS.
   The liability of the stockholders of a corporation to unpaid laborers is to be determined by the work the employees were

---

REFERENCES FOR POINTS IN HEADNOTES

[1–7] 19 Am Jur 2d, Corporations §§ 783, 784.
  Who's an employee, laborer, or servant, etc. of corporation within statute relating to liability of stockholders to that class of persons. 104 ALR 765.

originally hired to do where the employees, all skilled work-
men, agreed to continue working for the corporation, per-
forming whatever work was available, including manual labor,
until the corporation solved its financial difficulties, because
the new type of work was only temporary and the employees
were at all times ready and willing to perform their customary
duties (MCLA § 600.2908).

3. CORPORATIONS — LIABILITY OF STOCKHOLDERS — LABOR DEBTS —
COMPUTATION.
  The plaintiffs, who were hired as skilled workmen and agreed
  to do whatever work was available, including manual labor,
  when their employer-corporation was unable to pay salaries,
  are to be paid by the stockholders of the corporation, accord-
  ing to their original salaries and not to the pay scale of a
  laborer (MCLA § 600.2908).

4. CORPORATIONS—LIABILITY OF STOCKHOLDERS—LABOR DEBTS.
  Proceedings by the creditors of a corporation to enforce second-
  ary liability against the stockholders have traditionally been
  divided into labor and nonlabor claims (MCLA § 600.2908).

5. CORPORATIONS—LIABILITY OF STOCKHOLDERS—LABORERS.
  A junior draftsman, draftsmen at monthly salaries, a jig-
  designer, a pattern and jig-cutter and maintenance man, and
  a welder and foreman were entitled to payment from the stock-
  holders of a corporation for unpaid wages for manual labor
  performed after executions against the corporation had been
  returned unsatisfied, even though the plaintiffs were hired as
  skilled workers (MCLA § 600.2908).

6. CORPORATIONS—LIABILITY OF STOCKHOLDERS—LABORERS—SKILLED
LABORERS.
  A worker, even though he is a skilled workman who has per-
  formed labor for a corporation is entitled, by statute, to pay-
  ment for unpaid wages for his manual labor from the share-
  holders of the corporation when an execution has been returned
  unsatisfied against the corporation (MCLA § 600.2908).

CONCURRING OPINION

HOLBROOK, P. J.

7. CORPORATIONS—LIABILITY OF STOCKHOLDERS—LABOR DEBTS.
  *Plaintiffs, hired as skilled workmen, who, after their employer-
  corporation was unable to pay wages, agreed to perform what-
  ever work was available, including manual labor, have a right*

*to payment of wages from the stockholders of the corporation where the execution against the corporation is unsatisfied, because there was no claim presented for the work done in their skilled capacity but only for their unskilled labor (MCLA § 600.2908).*

Appeal from Ottawa, Raymond L. Smith, J. Submitted Division 3 February 3, 1970, at Grand Rapids. (Docket No. 6,807.)  Decided September 29, 1970.

Complaint by John Addicott, Carl Cooper, Marvin Schmidt, Elmer A. Steinke, Terence Blacklock, and others against Robert C. Upton, Wayne J. Cooper, G. Harold Baker, Helen C. Baker, Malcolm S. Ross, and other stockholders for unpaid labor debts. Judgment for plaintiffs. Stacia B. Jolman and John Yonkers. Judgment for defendants as to the other plaintiffs. Plaintiffs appeal and defendants cross-appeal as to plaintiffs Jolman and Yonkers. Complaint by Lawrence W. Marceau against Robert C. Upton and other stockholders for unpaid labor claims. Judgment for defendants. Plaintiff appeals. Motion to consolidate actions granted. Reversed.

*Robert Bunker Rogoski,* for plaintiffs Addicott, Cooper, Schmidt, Steinke, and Blacklock.

*Alexis J. Rogoski,* for plaintiff Lawrence W. Marceau.

*Hartwig, Crow & Jones,* for defendants.

Before: HOLBROOK, P. J., and DANHOF and ROOD,[*] JJ.

DANHOF, J. Plaintiffs are former employees and defendants are stockholders of Knoppel, Inc. a now

[*] Circuit judge, sitting on the Court of Appeals by assignment.

defunct corporation. Prior to this action, plaintiffs had recovered judgments against Knoppel for unpaid wages.

Executions were issued pursuant to these judgments and were returned *nulla bona*. Plaintiffs then instituted this action against the stockholders for the payment of wages authorized by RJA § 2908.[1] The statute authorizes a civil action against any or all the stockholders of a corporation for labor performed where an execution has been returned *nulla bona*.

James Jolman, a janitor, and John Yonkers, a night watchman, were also plaintiffs below. They prevailed, but the court denied plaintiffs' claims being of the opinion that they were skilled artisans and did not belong to that class of employees which the statute sought to protect. Plaintiffs have appealed and defendants have cross-appealed.

Plaintiff Blacklock was originally hired as a common laborer but was elevated to the position of junior draftsman before the financial difficulties arose. Plaintiffs Marceau and Addicott were hired as draftsmen at monthly salaries. Steinke was hired as a jig designer with most of his work being on the drafting board. Cooper was hired as a pattern and jig cutter and maintenance man; Schmidt was a welder and "foreman." All these men worked at their respective jobs until the corporation became unable to meet its payroll.

The hourly employees were dismissed, but plaintiffs met with the corporation's president to discuss the matter. They were told that new financing was being sought and was more apt to be forthcoming if production were maintained. They agreed to continue working for the corporation, performing whatever work was available, until the company got out of the woods. It never did.

---

[1] MCLA § 600.2908 (Stat Ann 1962 Rev § 27A.2908).

In Michigan, proceedings by creditors of corporations to enforce secondary liability against stockholders have traditionally been divided between labor and nonlabor claims. Const 1908, art 12, § 4 gave constitutional status to such labor claims. The 1963 Constitution does not perpetuate this constitutional status, but it has been perpetuated by RJA § 2908. The Revised Judicature Act became effective in 1963, and considering the traditional preferred and constitutional status of labor claims, it cannot be argued that this provision is repugnant to our present constitution. Const 1963, art 3, § 7.

Defendants argue that since they purchased stock in violation of the Blue Sky Law,[2] they cannot be held secondarily liable to these plaintiffs. Defendants, having been sold securities in violation of the Blue Sky Law, are afforded a remedy by MCLA § 451.810 [Stat Ann 1970 Cum Supp § 19.776(410)]. This section makes it optional with the purchaser of such stock to retain the stock or tender it back and be entitled to recover what has been paid. *Moore* v. *Manufacturers Sales Company* (1953), 335 Mich 606 (construing former CL 1948, § 451.120).

This provision of the Blue Sky Law was enacted for the protection of purchasers of securities and to penalize the sellers thereof. *Farm Products Co.* v. *Jordan* (1924), 229 Mich 235. It cannot be read to insulate the shareholders from the labor claims of the corporation's employees. In any event, this is not the proper proceeding for such a determination.

The main issue for determination is whether or not plaintiffs were laborers within the contemplation of RJA § 2908. They urge that if the work for which they were originally hired was not of the character protected, the manual labor they subsequently per-

---

[2] MCLA § 451.501 *et seq.* (Stat Ann 1970 Cum Supp § 19.776 [101] *et seq.*).

formed brought them within the statute's protection.
We reject that position because the work was tem-
porary in character and plaintiffs were at all times
ready and willing to perform their customary duties.
For the same reasons, plaintiffs' damages are to be
calculated at their original rates of pay and not on
a laborer's pay scale.  As stated by the court in *In
re B. H. Gladding Company* (D RI, 1903), 120 F 709,
711:[3]

"Wages are 'earned', in the sense that term is used
in the Bankruptcy Act, so long as a *bona fide* contract
of hiring exists, and the clerk or servant continues
in the master's employment and does all that he is
required to do."

The status of plaintiffs' claims, then, must be de-
termined in light of the employment for which they
were originally hired.

It is the object and purpose of the statute that the
corporation should be primarily liable for labor
debts and that the stockholders stand in the position
of sureties to insure payment thereof.  *Jorgensen* v.
*Mickle* (1932), 259 Mich 573.  By its language, the
statute gives this right to those who perform labor
for the corporation; it is not all employees who are
so protected.  Because of our reluctance to increase
the liability of a surety and because no such right
existed at common law, the statute and its predeces-
sors have been traditionally given a strict construc-
tion by our courts.

Plaintiffs are all skilled workers.  None of them
fall into the "class of men not well qualified to protect
themselves," who "labor for small compensation"
and are "in the power of their employers."[4]

The above characterization may have been apt for
the nineteenth-century laborer whom these acts were

---

[3] Quoted in 6 Remington, Bankruptcy, § 2790, p 355.
[4] *Ericsson* v. *Brown* (1862), 38 Barb (NY) 390.

designed to protect, but it can hardly be applied literally today. It it were, no one would qualify under the statute. A common laborer of 1970 may not have a great deal of skill, but he also may have a good wage, seniority, pension plan, grievance procedures, unemployment insurance, tax sheltered annuities, etc. Just as the above-depicted laborer is out of date, so are most of the cases interpreting our statute.

The problem remains, however, of where the line should be drawn. Even with a more enlightened construction, clearly all types of employees are not to be afforded the statute's protection. Even in the 19th century, our courts gave the term "laborer" its (then) ordinary meaning in common use. *Brockway* v. *Innes* (1878), 39 Mich 47. And even applying a strict construction, the Supreme Court in 1890 was unwilling to exclude from this definition an experienced miller whose work required the exercise of judgment and skill. Nor did the fact that he also received more money than did an unskilled worker exclude him. *Black's Appeal* (1890), 83 Mich 513.

There appears to be even less reason for now holding that only the wage claims of unskilled laborers are protected by RJA § 2908. A more realistic approach would be to exclude those who are corporate officers, *exercise a degree of discretion, have the power to delegate some authority,* and have some personal stake in the success or failure of the enterprise.

Looking to statutes from other jurisdictions, we find that employees such as these plaintiffs may or may not be included, depending on the language of the statute. Most statutes, however, speak in terms of "laborers and clerks"[5] and could be distinguished in that respect. Section 64(a)(2) of the Bankruptcy

[5] 13a Fletcher, Cyclopedia Corporations (1961 Rev) ch 58, § 6282, p 168.

Act[6] also speaks in terms of "workmen, servants and clerks," and while its purpose is different from that of RJA § 2908, interpretation of its terms are helpful.

The policy of congress in awarding priority to claims by workmen, servants, etc. was this fundamental consideration; " 'Priority of payment was intended only for the benefit of those who are dependent upon their wages * * * ', those who 'could not be expected to know anything of the credit of their employer, but must accept the job as it comes, to whom the personal factor in employment is not a practicable consideration.' " It has often been stated that " 'The intention of congress was plainly to give special protection to a class of wage earners who generally have no substantial savings to fall back on in case of adversity and therefore cannot afford to lose' ".[7]

The intent of congress was strikingly similar to the intent of our legislature in passing a forerunner to RJA § 2908. That intent was characterized in *Peck* v. *Miller* (1878), 39 Mich 594, 597:

"But there can be no doubt, we think, that the main if not the only object of this provision was to secure the claims of laborers whose wages are not usually very large, but whose means are not generally such that they can avoid suffering unless they are secured."

Under the Bankruptcy Act, the words "workmen, servants [and] clerks" are used in their popular sense. They include only those who work, labor, *or serve in a more or less subordinate capacity.*

---

[6] 11 USC § 104(a), 52 Stat 874 § 64(a)(2) (1938), June 22, 1938, c 575. That act provides as follows: "(2) Wages and commissions, not to exceed $600 for each claimant * * * due to workmen, servants, clerks, or * * * salesmen * * * ."

[7] 3A Collier, Bankruptcy (14 Ed), ¶ 64.204, p 2127.

*In Re Gay & Sturgis* (D Mass, 1916), 233 F 604.
The character of the work performed is an important
consideration, as are the economic status of the em-
ployment *and the degree of discretion permitted to
be exercised.* 3A Collier, Bankruptcy (14 Ed),
§ 64.204, p 2128.

These words have been held to include, in some
instances, a musician, bookkeeper and shop manager
(where his duties were more of the character of
services usually performed by workmen, servants
or clerks). *Collier, supra,* pp 2134, 2134.1. Priority
has also been accorded a wage claim of a claimant
who was the sole shareholder, a director, president
and general manager of the bankrupt corporation.
*Bass* v. *Shutan* (CA9, 1958), 259 F2d 561. Priority
will not be denied *merely because the employment
involves an exercise of discretion. Collier, supra,* p
2128, fn 9. In no case has priority been denied be-
cause a man's job requires a degree of skill.

It is natural that the language of the Bankruptcy
Act is construed more liberally than our statutes
imposing suretyship liability on stockholders, as its
purpose is to award wage earners' claims priority
as against other creditors of an insolvent corpora-
tion. However, five of the available Michigan cases
defining the term "labor"[8] have done so in the context
of construing a statute dealing with preferred labor
claim against insolvent corporation.[9] The remaining
four Michigan decisions[10] deal with the forerunners
of RJA § 2908. Each line of cases refers to, and at

---

[8] *Black's Appeal,* supra; *Petition of Sayles* (1892), 92 Mich 354;
*Appeal of Clark* (1894), 100 Mich 448; *Michigan Trust Co.* v.
*Grand Rapids Democrat* (1897), 113 Mich 615; *Lawton* v. *Richard-
son* (1898), 118 Mich 669.

[9] These statutes were the forerunners of MCLA § 408.511 [Stat
Ann 1968 Rev § 17.308(21)] giving priority to labor debts.

[10] *Brockway* v. *Innes, supra; Peck* v. *Miller, supra; Jones* v.
*Avery* (1883), 50 Mich 326; *Jorgensen* v. *Mickle, supra.*

least one instance (*Peck* v. *Miller* quoted in *Black's Appeal*) quotes from, the other.

Our courts have not in the past construed the term "labor" differently in the two classes of cases. Certainly we should not now do so, especially in light of the drastically changed economic conditions of our day. We now hold that plaintiffs, skilled workers though they be, have performed "labor" within the meaning of RJA § 2908 and, therefore, are accorded a right of action against the defendant-stockholders for the unsatisfied judgment.

Reversed.

Rood, J., concurred.

Holbrook, P. J. (*concurring*). This writer is unable to say that the plaintiffs who were found to be skilled artisans and specialists by the trial court come within the meaning of MCLA § 600.2908 (Stat Ann 1962 Rev § 27A.2908). However, the trial judge also determined in his opinion, in part, as follows:

"The claims of Blacklock, Cooper, Steinke, Addicott, Bloomquist, Schmidt, and Marceau require more detailed examination. Blacklock originally was hired as a common laborer but was elevated to a junior draftsman by the time the corporation showed evidence of financial difficulty. Marceau, Steinke, Addicott, and Bloomquist were all hired as draftsmen at a monthly salary. Steinke basically was a fixture and jig designer with most of his work being on the drafting board. Cooper was hired as a cabinet maker and pattern maker, a skilled trade. Schmidt was hired as a foreman. All these men worked in their respective fields until sometime in July of 1962 when the shop employees left their jobs because the corporation was unable to meet the payroll. Thereupon these plaintiffs met with Curt Knoppel, the president, and agreed to go into

the shop and assume the duties of production upon
the representation that new financing was being
sought and would be more apt to be forthcoming if
production was kept up. There is no question that
these plaintiffs thereby assumed the duties of ordi-
nary day laborers, *i.e.* production workers. It is
for this work that they now claim to have become
laborers within the meaning of the above statute."

Considering that the plaintiffs-appellants were
actually performing "the duties of ordinary day
laborers, *i.e.,* production workers", it seems reason-
able to apply the law as determined in the case of
*Lawton* v. *Richardson* (1898), 118 Mich 669, 670, 671:

"The record shows Mr. Richardson proposed to
engage in business in Detroit, and advertised for
a salesman and manager for a dry-goods store. Mr.
Lawton met him at the Russel House, and was told
by Mr. Richardson that he had $18,000 with which
he was going to buy goods. Mr. Lawton hired out
to him July 25th, for $75 a month, expecting to be
the manager of the store. He went to work July
27th, helping to get the store ready for business.
In August, Mr. Lawton and Mr. Richardson went
East, and bought the goods. August 22d, Mr. Law-
ton returned to Detroit, helped unpack the goods,
and helped about the marking of the goods, putting
them upon the shelves, and getting the stock ready
for the opening day. After that he did the work of
an ordinary clerk, helping about selling the goods,
sweeping out the store, and doing the general work
of the store. Mr. Richardson, at the time of the em-
ployment, asked Mr. Lawton to furnish $250 as
security for the proper performance of his work.
It was furnished to Mr. Richardson, and never re-
turned. It does not form any part of the decree
rendered by the circuit judge. * * *

"The store was closed about September 24th by
the creditors, either by commencing replevin and
attachment suits, or by mortgagees taking posses-

sion. Emma H. Hall is the mother-in-law of Mr. Richardson, and Thomas E. and William B. Hall his brothers-in-law.

"The circuit judge found that, as to the work done by Mr. Lawton when in New York, it was not the work of a laborer, within the meaning of the statute; but as to the other work done by him, and the work done by the other complainants, it was labor, within the meaning of the statute. It is apparent from what has already appeared that nearly all the labor done was not intellectual or professional in its character, nor was it of an especially skillful kind. It was, in the main, manual labor, and of such a character as the statute was intended to protect. *Black's Appeal* (1890), 83 Mich 520."

Mr. Lawton was permitted to recover for the work done as a laborer but was not permitted to recover for his services rendered while in New York in buying the goods for the store. Likewise, in the instant case, the plaintiffs-appellants recovered a judgment for services rendered for common labor in the shop. There is no claim for services rendered in their skilled profession. Division of the services rendered, therefore, is not necessary in our case, and plaintiffs are rightfully entitled to recover in this action.